John P. Flannery, II, Esq., VSB No.  22742
*Counsel for Petitioners*
CAMPBELL FLANNERY
1602 Village Market Blvd, Suite 220
Leesburg, VA 20175
Telephone:  202-365-5060
Facsimile:   540-822-3975
e-mail:        jonflan@aol.com
Web ………www.CampbellFlannery.com

# UNITED STATES COURT OF APPEALS FOR THE D.C. CIRCUIT

|  |  |
|---|---|
| Rebecca Snyder, Gemi Spaulding, Wilbert Louis Ogden, Clarissa Knopf, Dustin Parker, Michelle Gubbay-Snyder, Lera Anne Fuqua, Regina Dolan, Jessica Fujimaki,[1] Piper McKee-Wright, and Rodney Summers,  Petitioners,  v.  Hon. Merrick Garland, Atty General , Hon. Anne Milgram, DEA Administrator Hon. Edward Hendrie, Counsel DEA (served by certified mail) Respondents | 23-1007  **EMERGENCY PETITION FOR REVIEW AND A STAY** Patients Sought to Intervene in an administrative proceeding by DEA suspending any pain medication by Dr. Bockoff; they applied as "interested persons" under 5 USC 555(b) but the Admin Judge denied the request; thus (a)this motion to stay the proceedings below, and (b) to seek an order from this Court authorizing Intervention in the Administrative Proceeding. |

## Patient Intervenors petition this Court: (a) to Stay the DEA Administrative proceedings pending appeal, and (b) permit the Patients to intervene

[Appeal from - *In the Matter of David Bockoff, M.D. USDOJ, DEA – Docket No. 23-5*]

---

[1] Jessica Fujimaki was one of the original Patient Intervenors but she died soon after her prescriptions were denied; we have erred on the side of including her name.

**COMES NOW** the chronic Pain Patient Petitioners herein,[2] namely, (1) Rebecca Snyder, (2) Gemi Spaulding, (3) Wilbert Louis Ogden, (4) Clarissa Knopf, (5) Dustin Parker, (6) Michelle Gubbay-Snyder, (7) Lera Anne Fuqua, (8) Regina Dolan, (9) *Jessica Fujimaki*, (10) Piper McKee-Wright, and (11) Rodney Summers, by undersigned counsel, John P. Flannery, II, in reliance, *inter alia*, on Title 5, United States Code, Section 555, Title 21, United States Code, Section 824(d)(2), Title 21, United States Code, Section 877, Rule 24 of the Federal Rules of Civil Procedure, and DC Circuit Court Rule 15, to move this Honorable Court to overrule the DEA Administrative Court's final order, dated December 22, 2022, denying the pain patient petitioners' request to intervene in a proceeding to suspend or permit their doctor to prescribe pain medication; and

**COMES NOW FURTHER**, the Pain Patient Petitioners herein, by undersigned counsel, John P. Flannery, II, to move this Honorable Court to stay the proceedings pending before the DEA Administrative Court pending consideration by this Court of petitioners' request that the Pain Petitioners be permitted to intervene, and, in the meantime, to stay the hearing set to proceed on 1/19/23 until this Court has considered the matter;

# PETITION TO REVIEW

In support of this petition, the Chronic Pain Patient Petitioners present these salient concerns supporting why Intervention is appropriate in this case; the stay is briefly discussed afterwards..

## I. THE CHRONIC PAIN PETITIONERS – briefly

---

The DEA Administrative Court issued its final order on December 22, 2022, after failing to forward the order to Intervenors for 20 days. See Ex. 1. The Administrative Judge explained that she had "inadvertently" failed to forward the order to the Patient Intervenors when it was actually penned on December 2nd, but not delivered, without further explanation, until December 22, 2022. See Ex. 2.

1. We are talking about persons with severe disabilities that, for the most part, receive palliative care so that they can function.

2. We are entering a period, since November when the pain prescriptions were suddenly suspended, and these patients have had had to cope without their prescriptions.

3. The patients seek to participate in the DEA Hearing proceedings that will determine whether they receive pain medicine or not.

4. We appreciate that economy and conciseness are considerations when submitting this petition.  But it is worthy of the court's attention to know something about the patients, their context, described more fully to the DEA Administrative Court.

5. The first patient among the 11 patient petitioners, Rebecca Snyder is 70 years old and has had "severe intractable pain" because of "scoliosis involving her thoracic and lumbar spine" and has suffered stress fractures of both lower extremities during U.S. Army basic training in the late 70's.  Rebecca's pain is among the most severe and is acknowledge as "complex regional pain syndrome," known as "suicide disease," and another condition known as "adhesive arachnoidities."

6. If Rebecca doesn't receive pain medication, we cannot ignore the fact, that she has considered "assisted suicide."

7. Each patient petitioner represents a compelling picture of a legitimate chronic pain patient, who has suffer terribly because they have gone without medication since early November or December depending on their prescription cycle.

8. Lera Anne Fuqua, 42, suffers from "primary generalized dystonia, arachnoiditis, osteoporosis, and atrial fibrillation."  Lera is presently disabled.  She is taking the same dosage she had going back to 2008.  I hasten to add that the DEA does not accept the fact

that a chronic pain patient may have this excruciating mind numbing unremitting pain for life. DEA believes that only an addict takes pain medication. That's nonsense. Of course, the pain varies over times. There are better days and truly miserable days. But the pain may and does persist for many life long.

9. In Lera's case, she described the worst case: "At my worst, dystonia caused involuntary movements/spasms severe enough that I was unable to sit up straight, required a power chair with tilt/recline, shoulder straps, and lateral supports. My fingers were curled up, and I couldn't cut my own food. My overall health was not very good, I was constantly developing infections."

10. As for what the deprivation of pain medicine means for Lera, she said, "I will be unable to continue living independently unless meds are restored. I am unwilling to continue living long term if I can't regain the quality of life I worked so hard to build. I do not wish to be confined to a facility and may choose to end my life inside my home by ceasing to eat and drink until I succumb."

11. DEA presumes the community at large is in "imminent danger" without a scintilla of evidence any such thing is happening and when DEA is itself the "imminent danger" to the well being of Dr. Bockoff's patients..

12. When DEA denied pain medication to the patients herein they created an "imminent danger to the public health or safety" of the intervening patients, indeed the only public that is suffering. See 21 United States Code, Section 824(d)(1).

13. In other words, we should not lose sight of the fact that the "community" consists exclusively of the 240 patients denied medical treatment by DEA .

14. The statute defines "imminent danger to the public health or safety" as "a substantial likelihood of an immediate threat that death, serious bodily harm, or abuse of a controlled substance will occur in the absence of an immediate suspension of the registration.  See 21 United States Code, Section 824(d)(2).  We have the threat of death, and of bodily harm, by denying these patients their medication.  We have had a husband and wife commit suicide because he was so desperate to relieve the pain.  They used a hand gun.

15. The real emergency is to treat these patients.  The process that may affect that outcome is the hearing before the Administrative Law Judge.

## II.  THE STANDARD FOR INTERVENTION AS A THIRD PARTY

1. The DEA Administrative Court failed to follow the statutory and case authority that permits third party persons with "an interest" to intervene.

2. We have respectfully insisted that a chronic pain patient denied his medication demonstrates a sufficient "personal interest" to permit the pain patients to intervene in a proceeding that has as its sole concern the suspension of a physician's authority to prescribe medication to these patients to treat their disabilities and chronic pain.

3. It is crystal clear that "procedures in any administrative hearing held under the Act are governed generally by the rule making and/or adjudication procedures set forth in the Administrative Procedure Act (5 USC 551-559) …."  21 CFR Section 1316.41.

4. Title 5, United States Code, Section 555 (b) provides in relevant part that, "So far as the orderly conduct of public business permits, an underlined person may appear before an agency or its responsible employees for the presentation, adjustment, or determination of an issue, request, or controversy in a proceeding, whether interlocutory, summary, or otherwise or in connection with an agency function."

5. In *Animal Legal Def. Fund, Inc. v. Vilsack*, 237 F. Supp. 3d 15 (2017) the presiding administrative law judge concluded that the intervenors stated interests were beyond the scope of the proceeding.  The plaintiff objected that the administrative tribunal's decision was contrary to Section 555(b) of the APA.  The district court decided that the judicial officer's finding erred, and that plaintiff's interest was squarely within the scope of the proceeding, and the judicial officer's finding to the contrary "was therefore arbitrary and capricious under the APA."

6. The court underscored the fact that the APA "allows 'interested persons' to participate in agency proceedings 'so far as the orderly conduct of public business permits." Id, at 19.

7. The Court confirmed that "5 USC Section 555(b) applies to all forms of agency action," citing Friends of the *Bow v. Thompson*, 124 F.3d 1210, 1220 (10th Cir. 1997); see also *Block v. SEC,* 50 F.3d 1078, 1085.  Id at 21.

8. The Court concluded that Article III standing is not required.  Id. at 21.  Citing the DC Circuit, the Court stated, "Federal Agencies may, and sometimes do, permit persons to intervene in administrative proceedings even though these persons would not have standing to challenge the agency's final action in federal court," citing *Environcare of Utah, Inc. v. Nuclear Regulatory Comm'n*, 194 F.3d 72, 74 (DC Cir. 1999).  Id.

9. Parenthetically the Court cited the fact that "Agencies of course, are not constrained by Article III of the Constitution; nor are they governed by judicially-created standing doctrines restricting access to federal courts.  The criteria for establishing 'administrative standing' therefore may permissibly be less demanding than the criteria for 'judicial standing.'" *Id.*

10. In federal cases, where "judicial standing" applies, the measure is more rigorous than "administrative standing," and Rule 24 of the Federal Rules of Civil Procedure governs intervention.

11. There are two types of intervention in the civil procedure, that is, intervention as a "right" and "permissive" intervention.

12. Patient Petitioners respectfully insist that they satisfy this more rigid standard for intervention in both its prongs, as "right" or as a "permissive" grant.

13. Intervention as of right, found in Rule 24(a), permits anyone to intervene who "claims an interest relating to the …transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its [their] interest, unless existing parties adequately represent that interest."

14. The DEA has unilaterally cut off medicine to the chronic pain patients seeking to intervene, and most certainly DEA does not come close to "represent[ing]" the patients' interest.

15. Nor does Dr. Bockoff "adequately" represent the patients' interest in assuring to them their right to be treated, responding, as he assuredly is, to the insufficient factual basis to justify the immediate suspension of his registration ("ISO"); indeed Dr. Bockoff's counsel has refused to discuss the pending case with Dr. Bockoff's patients, represented by yours truly.

16. In "permissive intervention," Rule 24(b)(1)(B), the court may permit anyone to intervene if the intervening party's "claim or defense … shares with the main action a common question of law or fact."

17. Certainly we have satisfied that condition in this case. The subject matter is whether a physician may issue prescriptions for controlled substances. The patients depend on those palliatives to function. The statute is concerned with danger to the public. The public is

narrowly drawn here – and includes Dr. Bockoff's 240 patients including those named as petitioners herein.

18. The common question of law and fact is the authority of Dr. Bockoff to prescribe pain medication for the intervening chronic pain patients.

19. The patients seek to have the suspension of that authority dissolved, to have this administrative tribunal recommend to the Administrator that the suspension of the physician's authority itself be suspended or dissolved.

20. When exercising its discretion, according to Rule 24(b)(3), the court considers "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."

21. Given Intervenors' posture as chronic pain patients seeking relief immediately lest they suffer more, there is no concern that the patients' intervention will seek to delay these proceedings when permitted to intervene.

22. Intervenors seek no delay, in either procedural template, administrative or judicial, since the patients seek immediate action, as immediate as possible, to suspend the suspension, to dissolve the ex parte order at issue, and to restore to the chronic pain patients their medication, their right to be treated.

23. By contrast with the Court, DEA weighed in on this issue, conceding that "Interested persons" may rightly intervene, under 5 USC Section 555(b);

24. DEA concedes that the "definition" of an "interested party" is "broad," citing approvingly our case citation, *Animal Legal Defense Fund, Inc. v. Vilsack*, 237 F. Supp. 3d 15, 22 (DC 2017);

25. The government insisted, however, that for this Court to consider these "interested persons," entirely composed of chronic pain patients at demonstrably grave risk, facing unremitting

pain and suffering, ill health and possible suicide, because of DEA's improvidently issued summary order, is "inconvenient," so says DEA, to "the orderly conduct of public business," a gossamer thin and hackneyed objection made in the past but long disfavored by various courts including the discussion in the *Animal League Defense Fund case*, *supra*, and, the IRS-Pension case cited by DEA as its authority.

26. The DEA claims, in somewhat of a rhetorical pirouette, their concern is for "the public interest" (this reference is found in the 1st full graph of DEA's "Order to Show Cause and Immediate Suspension of Registration,"), overlooking, pardon the repetition, the plain fact that the only "public" possibly affected by DEA's summary order is a subset of the public, that is, Dr. Bockoff's 240 patients, and no one else;

27. In other words, DEA seeks to redress an "imminent" danger that DEA created, exclusive to the Pain Patient Petitioners.

### III. THE ADMINISTRATIVE COURT MISAPPREHENDED THE STRUCTURE AND PURPOSE OF THE CSA

28. The Administrative Court failed to appreciate that the Controlled Substance Act (CSA) contemplates not just the prosecution of those who abuse controlled substances, and I have prosecuted such cases against organized crime; but that same statute provides, more importantly, and this is the critically important aspect of the statute, for the permissible use of controlled substances to redress a patient's illness and chronic pain;

29. This Court's failure to appreciate that the wrongful suspension of the physician's authority to prescribe is the impermissible and unlawful abandonment of a patient, cutting a patient loose without providing for his or her continuing medical care;

30. This Court's failure to appreciate that the DEA regimen, when suspending a physician's license, simultaneously casts out patients to fend for themselves; it is an open secret discussed quite widely that when the DEA suspends the physician's authority to prescribe treatment, the defamatory brand chills almost all other physicians from taking on these patients, to care for them, for fear that the DEA will then "focus" impermissibly on those "Good Samaritan" physicians.

### IV. DEA CONDUCTED A GENERAL SEARCH OF DR. BOCKOFF's PRACTICE MORE THAN A YEAR AGO – admitting, in the filings, that DEA didn't have evidence that Dr. Bockoff was writing unauthorized scripts.

31. The Administrative Court failed to appreciate that the general search warrant served on the physician more than a year ago, irrespective of the court's refusal to consider whether this was an impermissible general warrant, contains striking admissions by the DEA.

32. The DEA believed there were patients in the physician's medically practice that were properly treated but the DEA couldn't say who those patients were.

33. In the warrant, Justice's DEA said, "in an abundance of caution, the following procedures will be followed in order to minimize disruption to the legitimate medical needs of lawfully-treated patients (if any) (underscoring supplied)."  Search Warrant (Ex. 2), Attachment B, III. Par. 8, at pg. ix.

34. This is quite startling.  It admits that DEA has reason to believe that patients have been "lawfully treated" but doesn't know who they are – and DEA seeks to reassures us that it will "minimize disruption," meaning what?, not leaving pain patients to suffer unremitting pain that may lead to suicide.

35. What does DEA mean by "minimize," is it that some patients with legitimate needs, may be denied the surcease from their pain, or may they also be overlooked, because we are only "minimizing"?

36. The gist of the DEA's "procedures" to avoid "disruption" was to return the patient file "of any patients who may appear to be lawfully treated by [David] BOCKOFF [M.D.]" and to "provide to the patient making the request [for his or her file] a copy of any medical information [the government] has regarding the patient within five days (excluding weekends and holidays) of receiving the request." (This is a reference to the Search Warrant, Attachment B, III. Par. 8, at pg. ix – x.)

37. On the Department's return on the search warrant, in its inventory of the patient files seized during the search, they identified 240 patient files.

38. After the search, without any patient's request, entirely on its own, the DEA returned digital copies of the files of about 200 patients.

39. As quoted above, Justice said it would only return patient files if the patient had been "lawfully treated."

40. The remainder of the 40 or so patient files from the search were supplied upon a request by Dr. Bockoff's counsel (not the undersigned), seemingly affirming that those patients were also "lawfully treated."

**V. THE COURT'S NEW MATH - LESS IS MORE, AND MORE IS LESS**

41. The Administrative Court admitted that there was a small sample of alleged inapt prescriptions to five patients, without any evidence of intent to issue unauthorized prescriptions to any one of these five patients.

42. In the recent Supreme Court decision, *Ziulu Ruan v. United States*, 142 S.Ct. 2370 (June 27, 2022), all justices concurring, 9-0, Justice Breyer delivered the opinion, stating, that it's not enough to say that "a prescription was not authorized;" rather, the Government must instead "prove that the doctor knew or intended that the prescription was unauthorized."  More than that, the Court criticized the fact that, at the time of the *Ruan* decision, that "the regulatory language defining an authorized prescription is, we [the Court] have said, 'ambiguous,' written in 'generalit[ies], susceptible to more precise definition and open to varying constructions (underscoring added)," citing *Gonzales v. Oregon*, 546 US 243, 258 (2006). Nor has DEA yet cured its preference for "ambiguity."

43. The math is simple. 5 out of 240 patients is 2 %.  The difficulty in making an inference from this sample size of 240 patients is that the population size (240) is limited.  An online app (https://www.calculator.net/sample-size-calculator.html ) suggests a sample size of 148 is necessary to have a 95% confidence level when drawing inferences about a finite population as small as 240 patients.



44. The formula for finite populations makes it clear by reference to its terms how important "N" - the population size - is to the calculation of confidence levels and margins of error (see below).

$$CI' = \bar{p} \pm z \times \sqrt{\frac{\bar{p}(1-\bar{p})}{n'} \times \frac{N-n'}{N-1}}$$

Finite population:

where
**z** is z score
**p̂** is the population proportion
**n** and **n'** are sample size
**N** is the population size

45. We respectfully suggested that you can't draw much of a conclusion from 5 patient files even if they were inappropriate in any way – and we insist that the prescriptions referenced for these five patients was not inapprorpriate..

46. The Administrative Court stated it gives no mind to the contrary evidential heft even when thousands of other patients were properly treated; five suspect patients, according to this court, are a fair sample, believing it doesn't make it so. (This argument is made in the final order, at p. 6, fn 10).

VI. **PATIENTS HAVE NOTHING TO ADD – so says the court - BECAUSE THE BUSINESS OF THE DEA HEARING ONLY INVOLVES PROPERTY RIGHTS**

47. This Court disavows the notion that the patients have any right to treatment, disregarding their disabilities, that they managed quite well, until the DEA suspended their care and treatment.  In the Administrative Court's view, patients are merelycollateral damage to the "property interest" at stake in the pending DEA Hearing on this physician's suspended authority to prescribe pain medication.

VII.    **DEA FORCES THE UNLAWFUL ABANDONMENT OF PATIENTS**

48. DEA interfered in contracts between 240 patients and their physician in the case of every one of our intervening patients, and every other one of Dr. Bockoff's 240 patients,,

49. Under Virginia law, where the Administrative Law Court sits, and California law, where Dr. Rockoff makes his practice, a doctor may not abandon a patient; it is unlawful.

50. To prove abandonment, it must occur when the patient needs medical attention, that is, at a critical stage of the treatment.

51. That is exactly what DEA forced in this case. Abandonmentt must take effect so abruptly that the patient has little or no time or resources to find a suitable replacement.

52. As a general proposition, "a physician who abandons a patient may do so 'only. . . after due notice, and an ample opportunity afforded to secure the presence of other medical attendance.' *Payton v. Weaver*, 131Cal.App.3d 38, 45 [182 Cal.Rptr. 225](1982).) *Compare* California Code Annotated, Article 4 Enforcement, Section 4955 k.

53. In California, when terminating the relationship, there must be notice and there must be time to continue treatment so as to provide time to assure competent medical care to follow.

54. DEA forced the abandonment of these 240 patients suddenly, abruptly, and without providing for competent medical care under the law, indeed by denying the patients the competent medical care they were receiving.

## MOTION TO STAY DEA ADMIN PROCEEDING

**WE SEEK TO STAY THE THE ADMINISTRATIVE PROCEEDING, SET TO PROCEED ON 1/19/23, SO THAT PATIENT PETITIONERS MAY PARTICIPATE**

55. On information and belief, the Administrative Court has set this matter for trial and hearing, commencing on 1/19/2023, and additional dates following;

56. We seek to participate in those proceedings but presently, the DEA Administrative Court has issued a final order denying that participation. See Exhibits 1 and 2.

57. Accordingly, we seek to have this Court grant a stay of the pending administrative hearing until we have a decision from this Circuit Court as it is our hope that we will be permitted to intervene.

58. We are prepared to expedite these proceedings in any way that makes sense to the Court.

59. We asked the administrative tribunal for a stay to permit Patients Intervenors to file an emergency petition for review and/or appeal in the DC Circuit Court.

60. We have not yet had a response from the court.  We presumed the application before the Administrative Court was a futile exercise.

**WHEREFORE**, based on this petition to review and to stay the administrative proceedings, the chronic Paint Petitioners respectfully ask this court to stay the proceedings while considering our request to Intervene, and such other relief as this Court deems fit and just.

John P. Flannery, II, Esq., VSB No. 22742
*Counsel for Petitioners*
CAMPBELL FLANNERY
1602 Village Market Blvd, Suite 220
Leesburg, VA 20175
Telephone:  202-365-5060
Facsimile:  540-822-3975
e-mail:      jonflan@aol.com
Web ………www.CampbellFlannery.com



## UNITED STATES DEPARTMENT OF JUSTICE

Drug Enforcement Administration

| | |
|---|---|
| In the Matter of | ) |
| | )     Docket No. 23-5 |
| David Bockoff, M. D. | ) |
| | )     EMERGENCY MOTION TO INTERVENE |

### Prospective Intervenors Did Not Receive this Court's Order

**COMES NOW**, the chronic pain patients, the Intervenors, by undersigned counsel, John P. Flannery, II, to note that this Court's Order of December 2, 2022 was not received, and was brought to our attention only this evening by other counsel (we've have reviewed past e-mail, trash, and spam and did not find the notice); plainly, some aspect of our filing today would have been stated differently; and we have received other material from the court, but not this order; in any case we request that this court grant us an opportunity to seek rehearing on this Court's Order of December 2nd, and to consider the pertinent aspects of our filing earlier today.

**WHEREFORE**, based on the pleadings to date, and this submission, and the past pleadings and exhibits incorporated by reference, the Patient Intervenors, by undersigned counsel, ask this Administrative Tribunal to permit the patients, by counsel, to submit a request to reconsider this Court's Order of December 2nd, 2022, to consider our filing earlier today, and to seek such other relief as this Court deems fit and just.

Respectfully submitted,

**John P. Flannery, II, Esq.,**
VSB No. 22742
CAMPBELL FLANNERY
38469 Triticum Lane
Lovettsville, VA 20180

(Pandemic Home Office)

Telephone:  202-365-5060
Facsimile:  540-822-3975
e-mail:      jonflan@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that service of a true copy of the foregoing has been made in accordance with the terms of the Administrative Tribunal, relying on the addresses, for the Clerk and DEA, set forth in 21 CFR sections 1316.45 and 1321.01, serving the following in the manner, by e-mails, as follows:

TYPE OF SERVICE –            e-mail –

To the "Hearing Clerk"       Anne.M.Cotter@dea.gov
                             ECF-DEA@dea.gov
                             Hearing Clerk
                             Office of Administrative Law Judges
                             DEA
                             8701 Morrissette Drive
                             Springfield, VA 22152
                             (21 CFR Section 1316.45)

To DEA Counsel

                             Dea.registration.litigation@dea.gov
                             Vanea A. Morrell,
                             Attorney for the Government
                             Office of Chief Counsel
                             Diversion and Regulatory Litigation Section
                             8701 Morrissette Drive
                             Springfield, VA 22152

To Dr. Bockoff's Counsel     MarkBartlett@dwt.com
                             Mark Bartlett, Esq.
                             Davis Wright Tremaine LLP
                             920 Fifth Ave, Suite 3300
                             Seattle WA 98104-
                             206-757-8298

                             alexporter@dwt.com
                             Alexander F. Porter, Esq.
                             Davis Wright Tremaine LLP
                             920 Fifth Ave, Suite 3300
                             Seattle WA 98104-

3

DATE OF SERVICE –          December 21, 2022

ITEM SERVED          **Prospective Intervenors Did Not Receive this**

**Court's Order**

# MOTION TO RENEW REQUEST TO INTERVENE

Unaware that the Court had written an order twenty days earlier, on December 2, 2022. but had not forwarded a copy of the order to Patient Intervenors or their counsel

**UNITED STATES DEPARTMENT OF JUSTICE**

Drug Enforcement Administration

|                       |   |                                   |
|-----------------------|---|-----------------------------------|
| In the Matter of      | ) |                                   |
|                       | ) | Docket No. 23-5                   |
| David Bockoff, M. D.  | ) |                                   |
|                       | ) | EMERGENCY MOTION TO INTERVENE     |

## RENEWED MOTION
## TO STAY THE SUSPENSION ORDER

**COMES NOW**, the chronic pain patients, the Intervenors, by undersigned counsel, John P. Flannery, II, to renew their (1) motion to intervene, and (2) motion to suspend the suspension order barring prescriptions by Dr. Bockoff; we renew these motions because neither motion has been addressed by this Court since argument closed on or about November 30, 2022 and because the chronic pain patients continue to suffer;

**COMES NOW FURTHER**, the Intervenors to confirm it is absolutely true, that there is no respite, that they do continue to suffer unrelenting pain, illness, despair and even death including the death of another patient;

**COMES NOW FURTHER** the Intervenors to press upon this Court to inspect the thin gruel that is the basis of the DEA's inapt suspension order; 240 patients were forcibly abandoned instantaneously by DEA in violation of ethical medical standards and statute, by the brute force of the government, and DEA's summary action was unsupported by the simple fact of the matter, namely, (a) DEA's confession a year ago that some of Dr. Bockoff's patients were or may have

1

been "lawfully treated,"[1] (b) DEA's alleged record keeping errors that are quite convincingly contradicted by the actual contents of the patient files,[2] (c) the DEA's five selected patients received sound prescriptions, and the notes in their medical files bear this out,[3] and (d) DEA focused only on 5 out of 240 (2%) patients, a statistically insignificant sample defying any reasonable person to infer anything from such a small grouping;[4]

**COMES NOW FURTHER** the Intervenors to underscore the fact, aggravated by the forced abandonment, that these patients, denied pain medication, live with an imprinted scarlet letter in each of their medical files, ever since the suspension order took effect, prompting any possible referent physicians to refuse to treat patients, abandoned on the say so of the DEA; in other words, there's no room at the inn for these pain patients, as this suspension order has chilled other pain physicians for fear the DEA will turn their offices upside down.

In support of this motion, Intervenors state further as follows:

1. While Intervenors have filed their motion to intervene, and responded to the DEA's opposition, this Court has, by its silence, failed to respond since on or about November 30, 2022 when we filed our opposition to the DEA argument.

2. After DEA served its general search warrant on Dr. Bockoff a year ago, it returned all the patient files it seized, and, on information and belief, had no additional information about any of the pain patients in the year that followed this constitutionally impermissible search.

3. Indeed, DEA had to request copies of the patient files of the five patients by subpoena.

---

[1] See Intervenors Emergency Motion, dated November 22, 2022, discussing the search warrant, at pars. 35 *et seq.*

[2] Id., at pars 49-74, discussing the 5 patients relied upon by DEA.

[3] Id., at pars. 64 b, c, e, 65, 69, 70, 71, and 72, discussing the medication prescribed and the rationale.

[4] Id., at pars. 5-6, 35-47, 53-63, et seq, discussing the statistically insignificant examples of patients who DEA claims were wrongly prescribed when the contrary is manifest.

2

4. DATA SHOULD MATTER - From the outset, we have cited this small sample that DEA has relied on to question Dr. Bockoff's intent to issue only authorized prescriptions, and to deny treatment, and abandon those patients.

5. The math is simple. 5 out of 240 patients is 2 %. The difficulty in making an inference from this sample size of 240 patients is that the population size (240) is limited. An online app (https://www.calculator.net/sample-size-calculator.html ) suggests a sample size of 148 is necessary to have a 95% confidence level when drawing inferences about a finite population as small as 240 patients.



6. The formula for finite populations makes it clear by reference to its terms how important "N" – the population size - is to the calculation of confidence levels and margins of error.

7. The Hon. DEA Administrator Anne Milgram has insisted on an approach to criminal justice that is based on smart data, analytics and technology. In an article title, "Moneyballing Criminal Justice," The Atlantic (June 30, 2012), said that, "[M]ost jurisdictions do not collect

3

or analyze the data necessary to know whether these [criminal justice] decisions are being made in a way that accomplishes the most important goals of the criminal justice system: increased public safety, decreased recidivism, reduced cost, and the fair efficient administration of justice."

8. We respectfully suggest that you can't draw much of a conclusion from 5 patient files even if they were inappropriate in any way – and we insist that the prescriptions referenced for these 5 patients were proper. So much for "data driven" law enforcement. See Anne Milgram: How Can Smarter Statistics Help Us Fight Crime? Ted Radio Hour, January 26, 2018 (part 5 of the TED Radio House Episode – Can we Trust the Numbers?)

9. THE GOVERNMENT's UNLAWFUL CONDUCT MATTERS. Among the most concerning misconduct of DEA is that DEA suspended Dr. Bockoff's authority to prescribe pain medication without cause, without providing sufficient notice to the patients, or providing for sufficient medical treatment when denying prescriptions by Dr. Bockoff, and shifted the burden of persuasion to Dr. Bockoff to prove his intent was honest and innocent and in the best interest of the patients that DEA abandoned, when DEA had questionable evidence to the contrary.

10. DEA interfered in contracts between 240 patients and their physician.

11. In the case of every one of our intervening patients, and we believe, every other one of Dr. Bockoff's patients, it is unlawful to abandon a patient.

12. Under Virginia law, where this Court sits, and California law, where Dr. Rockoff makes his practice, a doctor may not abandon a patient; it is unlawful.

13. Patient abandonment is a form of medical malpractice that occurs when a physician terminates the doctor-patient relationship without reasonable notice or a reasonable excuse,

4

and fails to provide the patient with an opportunity to find a qualified replacement care provider.

14. To prove abandonment, it must occur when the patient needs medical attention, that is, at a critical stage of the treatment.

15. That is exactly what DEA forced in this case.

16. It must take effect so abruptly that the patient has little or no time or resources to find a suitable replacement.

17. Certainly, that's this case.

18. As a general proposition, "a physician who abandons a patient may do so 'only. . . after due notice, and an ample opportunity afforded to secure the presence of other medical attendance.' *Payton v. Weaver*, 131Cal.App.3d 38, 45 [182 Cal.Rptr. 225](1982).) *Compare* California Code Annotated, Article 4 Enforcement, Section 4955 k.

19. In California, when terminating the relationship, there must be notice and there must be time to continue treatment so as to provide time to assure competent medical care to follow.

20. DEA forced the abandonment of these 240 patients without providing for competent medical care under the law, indeed by denying the patients the competent medical care they were receiving.

21. In our case Dr. Bockoff did not abandon his patients.

22. But DEA did.

23. The DEA interfered and forced abandonment by its ill considered suppression order.

24. Virginia's code disfavors abandonment in the same manner: at 18 VAC85-20-28 (B)(2)(covering the Board of Medicine); stating in relevant part: "Except as provided under Section 54.1-2962.2 of the Code of Virginia, a practitioner shall not terminate the

5

relationship or make his services unavailable without documented notice to the patient that allows for a reasonable time to obtain the services of another practitioner."

25. Every other state has case law and/or statutory authority disfavoring abandonment of a patient in the manner forced by DEA – apparently, as a matter of course.

26. DEA's CHILLING EFFECT – has made it virtually impossible to "obtain the services of another practitioner" and there's the rub; DEA has issued its stamp of disapproval and no other physician is going to ask the questions we are asking in these proceedings because of the risk alone of being tarred by that association with a DEA matter, notwithstanding the merits.

**WHEREFORE**, based on the pleadings to date, and this submission, and the past pleadings and exhibits incorporated by reference, the Patient Intervenors, by undersigned counsel, ask this Administrative Tribunal to permit the patients to intervene and to suspend the suspension order denying them medical treatment, and we seek such other relief as this Court deems fit and just.

Respectfully submitted,

**John P. Flannery, II, Esq.**,
VSB No. 22742
CAMPBELL FLANNERY
38469 Triticum Lane
Lovettsville, VA 20180

(Pandemic Home Office)

Telephone: 202-365-5060
Facsimile: 540-822-3975
e-mail:     jonflan@aol.com

6

## CERTIFICATE OF SERVICE

I hereby certify that service of a true copy of the foregoing has been made
in accordance with the terms of the Administrative Tribunal, relying on the
addresses, for the Clerk and DEA, set forth in 21 CFR sections 1316.45 and
1321.01, serving the following in the manner, by e-mails, as follows:

TYPE OF SERVICE –          e-mail –

To the "Hearing Clerk"     Anne.M.Cotter@dea.gov
                           ECF-DEA@dea.gov
                           Hearing Clerk
                           Office of Administrative Law Judges
                           DEA
                           8701 Morrissette Drive
                           Springfield, VA 22152
                           (21 CFR Section 1316.45)

To DEA Counsel

                           Dea.registration.litigation@dea.gov
                           Vanea A. Morrell,
                           Attorney for the Government
                           Office of Chief Counsel
                           Diversion and Regulatory Litigation Section
                           8701 Morrissette Drive
                           Springfield, VA 22152

To Dr. Bockoff's Counsel   MarkBartlett@dwt.com
                           Mark Bartlett, Esq.
                           Davis Wright Tremaine LLP
                           920 Fifth Ave, Suite 3300
                           Seattle WA 98104-
                           206-757-8298

                           alexporter@dwt.com
                           Alexander F. Porter, Esq.
                           Davis Wright Tremaine LLP
                           920 Fifth Ave, Suite 3300
                           Seattle WA 98104-

7

DATE OF SERVICE –          December 21, 2022

ITEM SERVED          **RENEWED MOTION**
                     **TO STAY THE SUSPENSION ORDER**



**U. S. Department of Justice**

Drug Enforcement Administration

Office of Administrative Law Judges
8701 Morrissette Drive
Springfield, Virginia 22152

---

*www.dea.gov*                      December 22, 2022



John P. Flannery, II, Esq.
Campbell Flannery
38469 Triticum Lane
Lovettsville, Virginia 20180

**Re:  Emergency Motion to Intervene in the**
        **Matter of *David Bockoff, M.D.***
        **Docket No. 23-5**

Mr. Flannery:

I am in receipt of your Renewed Motion to Stay Suspension Order, filed on December 21, 2022, and your notice entitled "Prospective Intervenors did not Receive this Court's Order," filed on December 22, 2022. You were inadvertently omitted from the email serving my Order Denying Patients' Emergency Motion to Intervene, which was served on the parties on December 2, 2022. I am providing you a copy of that Order with this letter. Your Renewed Motion, which reframes arguments you have made previously, does not change my decision as set forth in the December 2, 2022 Order.

Respectfully,

**TERESA**     Digitally signed by
                          TERESA WALLBAUM
**WALLBAUM**  Date: 2022.12.22
                          11:38:00 -05'00'

Teresa A. Wallbaum
Administrative Law Judge

cc: Vanea A. Morrell, Esq.
    Mark N. Bartlett, Esq.
    Alexander F. Porter, Esq.

Enclosure

# THE COURT'S ORDER FORWARDED ON 12/22/22

Apparently written on December 2, 2022, but not published to Patient Intervenors or their counsel until 12/22/22.

**UNITED STATES DEPARTMENT OF JUSTICE**

**Drug Enforcement Administration**

In the Matter of

**David Bockoff, M.D.**

**Docket No. 23-5**

### ORDER DENYING PATIENTS' EMERGENCY MOTION TO INTERVENE

On October 25, 2022, the Drug Enforcement Administration (DEA) Office of the Chief Counsel (the Government) filed an Order to Show Cause and Immediate Suspension Order (OSC/ISO) immediately suspending and proposing to revoke the DEA Certificate of Registration (COR) of David Bockoff, M.D. (Respondent). On November 23, 2022, counsel for eleven patients of Respondent (the Patients) filed a Motion to Intervene titled, in full: "Patients' Emergency Motion to Intervene by Patients of Dr. Bockoff, Seeking to Suspend the Fatally Defective DEA Order Suspending Dr. Bockoff's Authority to Prescribe Lest These Chronic Pain Patients Suffer Unremitting Pain and Consider Suicide – One Patient, [D.E.], and His Wife Have Already Committed Suicide."[1]  This tribunal directed the Government and Respondent to file their positions on the Motion to Intervene, should they wish to do so, by November 30, 2022.[2]  The Government filed its Opposition to Motion to Intervene.  Respondent did not file a position.  On December 1, 2022, the Patients filed their Reply to Government's Opposition to Patients' Motion to Intervene (Patients' Reply).[3]

---

[1] In the Motion to Intervene—including in the title—counsel repeatedly uses the full names of the Patients and reveals the full names of the patients identified in the OSC/ISO, who are not among the eleven Patients seeking to intervene.  Consistent with Agency practice, this tribunal uses only the patient initials to preserve patient privacy.

[2] Prior to this deadline, the Patients filed an "Emergency Motion" entitled "Patient Intervenors Request the Opportunity to Participate in the Hearing (VTC) Set for 11/29/22 at 3, Especially Given the Fact that the Patients, Now Denied Refills of Their Pain Medications, are Increasingly in Pain and Concerned About Suicide."  This tribunal denied that motion on November 28, 2022.

[3] Replies are not a matter of right in these administrative proceedings, and the Patients did not request leave from this tribunal to file a reply.  Nonetheless, this tribunal will consider the arguments raised in the Patients' Reply.

As the moving party, the Patients seeking to intervene bear the burden of establishing that they are entitled to the relief they request. 21 C.F.R. § 1316.56; 5 U.S.C. § 556(d). The Patients' theory, in sum, is that they are entitled to intervene in these proceedings to seek immediate dissolution of the ISO because they have a right to obtain medical treatment—specifically controlled substances—from Respondent. For the following reasons, the Patients fail to meet their burden that they are entitled to intervene in these administrative proceedings.

**First**, the Patients fail to meet their burden of establishing they have standing to participate in this matter under the Controlled Substances Act (CSA) and its implementing regulations.[4] The patients rely upon the Administrative Procedure Act (APA), specifically, 5 U.S.C. § 555(b), and *Animal Legal Def. Fund, Inc. v. Vilsack*, 237 F. Supp. 3d 15 (2017), to argue that they are "interested parties" and thus may intervene in this administrative matter involving the OSC/ISO of a DEA registrant.[5] Mot. to Intervene at 20-22. But, intervention typically requires that the prospective intervenors have standing, *Nichols v. Bd. of Trs.*, 835 F.2d 881, 896 (D.C. Cir. 1987), and "[t]he starting point in determining administrative standing should be the language of the statutes and regulations that provide for an administrative hearing, appeal or intervention," *Koniag, Inc., Uyak v. Andrus*, 580 F.2d 601, 614 (D.C. Cir. 1978) (Bazelon, J., concurring) and *id.* at 606. The standing analysis is thus an individualized one, within the context of the regulations and the statutory scheme as a whole. *Nichols*, 835 F.2d at 896 n.108.[6] The Patients make no argument that, under the CSA and its attendant DEA regulations, they qualify as "interested parties" and have standing.[7] On that basis alone, the Patients fail to meet their burden.

---

[4] The Patients also fail to establish that Rule 24 of the Federal Rules of Civil Procedure supports intervention. Mot. to Intervene at 22. While the Federal Rules of Civil Procedure may serve as helpful guidance on certain procedural issues, they do not apply to administrative hearings. *Mister Disc. Stockbrokers, Inc. v. SEC*, 768 F.2d 875, 878 (7th Cir. 1985); *Roy E. Berkowitz, M.D.*, 74 Fed. Reg. 36758, 36759 (2009). Thus, the Patients' blanket reliance on a non-binding rule of Federal Civil Procedure is insufficient to justify intervention.

[5] The Patients argue that the Government has conceded both that § 555(b) and *Animal Legal Defense Fund* apply. Patients' Reply at 1. Government concessions do not bind this tribunal in determining the standing of a party to intervene or in determining this tribunal's jurisdiction.

[6] The Patients dispute the Government's interpretation of *Nichols*. Patient's Reply at 3-4. That dispute is irrelevant to this tribunal's analysis.

[7] Indeed, evaluating standing under the specific regulatory framework is especially important given the complexity of the DEA regulations, which contain different language regarding standing and third-party participation depending on the category of registrant and the type of administrative proceeding. *See, e.g.*, 21 C.F.R. §§ 1300.01, 1301.34(a), 1316.47(a). In this regard, the Patients'

Even construing the Patients' Motion to Intervene generously, they still fail to establish standing. The CSA creates a complex "closed regulatory system," a "comprehensive regime" with the main objectives of "conquer[ing] drug abuse and . . . control[ling] legitimate and illegitimate traffic in controlled substances." *Gonzales v. Raich*, 545 U.S. 1, 12 (2005). In drafting the CSA, "Congress was particularly concerned with the need to prevent the diversion of drugs from legitimate to illicit channels." *Id*. at 12-13. To prevent diversion, "Congress devised a closed regulatory system making it unlawful to manufacture, distribute, dispense, or possess any controlled substance except in a manner authorized by the CSA." *Gonzales*, 545 U.S. at 13. Under the CSA's closed regulatory system, all persons or entities in the "legitimate distribution chain" of controlled substances must be registered with DEA under the criteria in 21 U.S.C. § 823. *See* H.R. Rep. 91-1444, 91st Cong., 2nd Sess. (1970) reprinted in 1970 U.S.C.C.A.N. 4566, 4589.

The registrant here is a practitioner under 21 C.F.R. § 1301.11(a), and the registrant is entitled to a hearing because the registration is considered a property interest that cannot be revoked without affording a registrant or applicant due process through notice and an opportunity to be heard. *See Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 196 (2001); *Odette L. Campbell, M.D.*, 80 Fed. Reg. 41062, 41067-68 (2015) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); and then citing *Mullane v. Cent. Hanover Bank & Tr.*, 339 U.S. 306, 313 (1950)). The Patients are not registrants and do not identify any statutory right or property interest that makes them entitled to a hearing; nor do they argue that they fall within the statutory zone of interest. *Cf. Bonds v. Tandy*, 457 F.3d 409, 414 (5th Cir. 2006). In other words, the Patients wholly fail to articulate any cognizable basis for their standing to intervene in these proceedings.[8]

---

reliance on *Animal Legal Defense Fund* is unpersuasive because that decision interpreted the Animal Welfare Act of 1966, which "establishes minimum standards for the humane care and treatment of animals that are exhibited to the public." 237 F. Supp. 3d at 19. This is a starkly different regulatory system than the CSA.

[8] Even if applicable, under § 555(b) an Administrative Law Judge has "broad discretion to limit the participation of interested individuals and organizations in agency proceedings" and can deny intervention if the prospective intervenor's "interests exceed the scope of the relevant proceeding," or granting intervention would "otherwise impede 'the orderly course of public business.'" *Animal Legal Def. Fund*, 237 F. Supp. 3d at 22-23 (quoting 5 U.S.C. § 555(b)). The Patients seek to intervene "so they may inform the parties and this administrative tribunal what's at risk for the patients." Mot. to Intervene at 19. But nowhere do they explain why that information is within the scope of these proceedings. *See Brenton T. Wynn, M.D.*, 87 Fed. Reg. 24228, 24259 (2022) (Agency assumes Respondent has prescribed legally, except where Government has established legal violations); *Gulf Med Pharmacy*, 86 Fed. Reg. 72694, 72710 n.28 (2021) (patient testimony

**Second**—and significantly—this tribunal lacks jurisdiction over the relief sought by the Patients—the dissolution of the ISO. Mot. to Intervene at 1, 2, 23. It is beyond dispute that this is what the Patients seek—an immediate dissolution of the ISO so that Respondent can continue to prescribe controlled substances to the Patients. *See id.* at 1 ("seeking to suspend the fatally defective DEA order Suspending Dr. Bockoff's authority to prescribe"); *id.* at 2 (moving this tribunal "to recommend the immediate suspension or dissolution of the DEA Order suspending Dr. Bockoff's authority to prescribe and treat chronic patients"); *id.* at 23 ("The patients seek to have the suspension of that authority [to prescribe] dissolved . . ."); Patients' Reply at 4 ("We seek an opportunity to argue for the suspension or dissolution of the suspension order . . ."); *see also* Patients' Emergency Motion, Patient Intervenors Request the Opportunity to Participate in the Hearing (VTC) Set for 11/29/22 at 3, Especially Given the Fact that the Patients, Now Denied Refills of Their Pain Medications, are Increasingly in Pain and Concerned About Suicide at 3 (requesting that "the suspension order itself be suspended or dissolved"). It is equally beyond dispute that any challenge to the Agency's determination to immediately suspend Respondent's registration during the pendency of these proceedings is beyond the jurisdiction of this tribunal.

---

regarding quality of medical care typically not relevant under public interest factors). Nor do the Patients adequately address the factors articulated in *Animal Legal Defense Fund* for determining whether intervention would impede the orderly course of public business. 237 F. Supp. 3d at 23. The Patients do not fare well under those factors. First, the "nature of the contested issue," *id.*, is whether Respondent's continued registration is consistent with the public interest. Under the CSA, the public interest is diversion prevention, *Gonzales*, 545 U.S. at 12-13, not the interest of patients to obtain controlled substances from a specific doctor. Second, "the prospective intervenor's precise interest," *Animal Legal Def. Fund*, 237 F. Supp. 3d at 23, appears to be obtaining controlled substances to treat their pain, Mot. to Intervene at 1, 23-24, 26, but the OSC/ISO does not preclude them from doing so; it simply precludes them from obtaining controlled substances from Respondent. Third, Respondent can adequately represent the Patients' interest as he is best situated to explain the treatment of his patients. Fourth, the prospective intervenors have a very limited ability to "present relevant evidence and argument," *Animal Legal Def. Fund*, 237 F. Supp. 3d at 23, precisely because there is no allegation the prescriptions they received were unlawful. *See Wynn*, 87 Fed. Reg. at 24259; *Med. Shoppe—Jonesborough*, 73 Fed. Reg. 364, 386 n.56 (2008). Fifth, allowing eleven additional patients to present evidence and arguments will extend the duration of the proceedings and burden Respondent's due process right to a prompt adjudication on the deprivation of his COR. *See* 21 C.F.R. § 1301.36(h). Sixth, allowing the Patients to intervene to present largely irrelevant testimony or to repeat arguments Respondent is capable of advancing would impede the Agency's mandate to promptly address whether Respondent's continued registration should be revoked as inconsistent with the public interest. Thus, granting the Motion to Intervene would impede the orderly course of public business.

4

21 U.S.C. §§ 824(d), 877; 21 C.F.R. § 1301.36(h); *see also Barry M. Schultz, M.D.*, 76 Fed. Reg. 78695, 78697 (2011) (whether an immediate suspension was appropriate, "either substantively or procedurally . . . is not reviewable by [the ALJ], and must be pursued in federal District Court or directly to the Administrator"). It is axiomatic that the Patients cannot establish that intervention is justified when the sole relief they seek falls outside the jurisdiction of this tribunal.

**Third**, to the extent the Patients raise general constitutional challenges to the CSA, those underlying arguments also fall outside this tribunal's authority. *See Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 673 (6th Cir. 2018) (administrative agencies have "no authority to entertain a facial constitutional challenge to the validity of a law"). Even the specific constitutional challenges fall outside this tribunal's authority. For example, the Patients spend considerable time challenging the constitutionality of the criminal search warrant as a general warrant in violation of the Fourth Amendment. Mot. to Intervene at 3, 5-7. But, this tribunal is not a criminal court and has no authority to look behind criminal proceedings or evaluate the constitutionality of criminal search warrants.[9] In a similar vein, the Patients claim that the proceedings interfere with their constitutional right to medical treatment. Mot. to Intervene at 23-24. But, the Patients provide no caselaw establishing such a constitutional right exists; instead, they rely on *Robinson v. California*, 370 U.S. 660, 666 (1962), which held unconstitutional a state statute criminalizing narcotics addiction. But, this is not a criminal case and neither Respondent nor any of the patients (whether listed in the OSC/ISO or the prospective intervenors) face a sanction of imprisonment. And, of course, the DEA OSC/ISO does not prevent the Patients from receiving treatment, it just prevents them from obtaining controlled substances from Respondent.

Finally, the Patients assert a constitutional due process claim, arguing that the administrative proceedings are fundamentally unfair because they interfere with the Patients' pain medication. Mot. to Intervene at 26. But, as noted above, within the suspension/revocation context, the hearing requirement stems from the notion that a DEA COR is considered a property interest and, therefore, it cannot be revoked, or an application denied, without affording a registrant or applicant due process, which requires notice and an opportunity to be heard. *See G & G Fire*

---

[9] Nor does this tribunal have authority to second-guess the legal sufficiency of a criminal search warrant authorized by a federal Magistrate Judge. *See* Mot. to Intervene at 4-5. Similarly, this tribunal has no jurisdiction over the Patients' claim that they have been "slandered" and they "did nothing wrong," Mot. to Intervene at 3, a claim which also ignores the fact that the OSC/ISO does not list the eleven patients, let alone accuse them of wrongdoing.

*Sprinklers, Inc.*, 532 U.S. at 196; *Campbell*, 80 Fed. Reg. at 41067-68 (2015). The Patients have not established that they have a property interest in Respondent's DEA COR, any independent property interest in obtaining controlled substances specifically from Respondent, or any other statutory or constitutional right; therefore, they have not established any entitlement to constitutional due process in these administrative proceedings.[10]

Accordingly, the Patients Motion to Intervene is hereby **DENIED**.

Dated: December 2, 2022

TERESA <span>Digitally signed by<br>TERESA WALLBAUM</span>
WALLBAUM <span>Date: 2022.12.02<br>13:04:18 -06'00'</span>
TERESA A. WALLBAUM
Administrative Law Judge

---

[10] This tribunal has considered all remaining arguments in the Patients' Motion to Intervene, including the attached statements from the eleven patients regarding their pain and the effectiveness of Respondent's treatment.    These arguments are not sufficient to justify intervention. Notably, the Patients' argument that the five patients identified in the OSC/ISO represent a small fraction of Respondent's medical practice, Mot. to Intervene at 3, 8-9, cannot justify intervention here because the Agency gives no more than nominal weight to evidence that a practitioner has engaged in lawful dispensing to thousands of other patients. *Syed Jawed Akhtar-Zaidi, M.D.*, 80 Fed. Reg. 42962, 42968 (2015), *pet. for rev. denied*, 841 F.3d 707, 711 (6th Cir. 2016); *Med. Shoppe—Jonesborough*, 73 Fed. Reg. at 386 n.56.

## CERTIFICATE OF SERVICE

This is to certify that the undersigned, on December 2, 2022, caused a copy of the foregoing to be delivered to the following recipients: (1) Vanea A. Morrell, Esq., Counsel for the Government, via email to Vanea.A.Morell@dea.gov and the DEA Government Mailbox at dea.registration.litigation@dea.gov; (2) Mark N. Bartlett, Esq., Counsel for Respondent, via email to markbartlett@dwt.com; (3) Alexander F. Porter, Esq., Counsel for Respondent, via email to alexporter@dwt.com; and (4) John P. Flannery, II., Esq., Counsel for patients, via email to jonflan@aol.com.

BELLA
MAPESO
Digitally signed by BELLA MAPESO
Date: 2022.12.02 13:07:26 -05'00'

Bella Mapeso
Staff Assistant
Office of Administrative Law Judges

7

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. 26.1, the undersigned counsel of record for chronic pain

petitioner intervenors hereby certifies that the patients are individuals, and not corporate

entities, and this disclosure does seek to certify this and to say further that none of the

pain petitioners has any parent company, subsidiary, or affiliates that have issued shares

to the public.


January 11, 2023


John P. Flannery, II, Esq., VSB No.  22742
*Counsel for Petitioners*
CAMPBELL FLANNERY
1602 Village Market Blvd, Suite 220
Leesburg, VA 20175
Telephone:  202-365-5060
Facsimile:  540-822-3975
e-mail:        jonflan@aol.com
Web ……...www.CampbellFlannery.com

## CERTIFICATE OF SERVICE

I certify that this Petition for Review and Corporate Disclosure Statement was filed with the Court *via* the Court's electronic filing system, on the 12th day of January 2023, and a copy of the Petition was sent via non-electronic means to the following, and, additionally, also by email to Vanea A. Morrell, counsel before the Bockoff DEA Administrative Trial proceeding:

The Honorable Merrick Garland
U.S. Attorney General
US Department of Justice
950 Pennsylvania, NW
Washington, DC 20530 – served by certified mail.

The Honorable Anne Milgram
Administrator
Drug Enforcement Administration
7000 Army-Navy Dr.
Arlington, VA 22202 - served by certified mail.

ATT: Vanea A. Morrell, Attorney for Government
Chief Counsel – also served by e-mail

Hon. Edward Hendrie
Office of General Counsel
Drug Enforcement Administration
8701 Morrissette Dr.
Springfield, VA 22152 - served by certified mail.

Civil Process Clerk
Office of the U.S. Attorney for the District of Columbia
601 D St., NW
Washington, DC 20530 - served by certified mail.

John P. Flannery, II, Esq.